DUANE MORRIS LLP
Karineh Khachatourian (CA SBN 202634)
kkhachatourian@duanemorris.com
Patrick S. Salceda (CA SBN 247978)
psalceda@duanemorris.com
490 S. California Avenue, Suite 200
Palo Alto, CA  94306-2068
Telephone: 650.847.4150
Facsimile: 650.847.4151

DUANE MORRIS LLP
L. Norwood Jameson (GA SBN 003970)
wjameson@duanemorris.com
Matthew C. Gaudet (GA SBN 287759)
mcgaudet@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
jhforte@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA  30309
Telephone: 404.253.6901
Facsimile: 404.253.6901

DUANE MORRIS LLP
Joseph A. Powers (PA SBN 84590)
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

Attorneys for Defendant and Counterclaim-Plaintiff
NETAPP, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| PersonalWeb Technologies, LLC and Level 3 Communications, LLC,<br><br>                                   Plaintiffs,<br>         vs.<br><br>NetApp, Inc.<br>                                   Defendant. | Case No. 5:13-cv-1359-EJD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO STAY PENDING *EX PARTE* REEXAMINATION AND *INTER PARTES* REVIEW**<br><br>Hon. Edward J. Davila<br><br>Hearing Date: 01/10/2014<br>Time: 9:00 a.m.<br>Courtroom: Fifth Floor, Courtroom 4 |

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION AND MOTION .................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................3

I.      INTRODUCTION ........................................................................................................3

II.     BACKGROUND ..........................................................................................................5
        A.      PTO's Findings About The Lack of Novelty of the '791 Patent ...................5
        B.      PersonalWeb's Lawsuit Against NetApp ........................................................8
                1.      History of Asserted Patents and Claims.............................................8
                2.      Status of Discovery ..........................................................................10
        C.      The Pending Reexaminations .......................................................................10

III.    LEGAL STANDARDS ..............................................................................................12

IV.     ARGUMENT .............................................................................................................12
        A.      The Stage of the Litigation Proceedings in This Case Favors A Stay .........12
        B.      A Stay Will Simplify the Issues....................................................................15
        C.      A Stay Will Not Unduly Prejudice or Disadvantage PersonalWeb ............17

V.      CONCLUSION..........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ASCII Corp. v. STD Entm't USA, Inc.*,
844 F. Supp. 1378 (N.D. Cal. 1994) ..................................................................4, 12

*AT&T Intellectual Prop. I v. Tivo, Inc.*,
774 F. Supp. 2d 1049 (N.D. Cal. 2011) ...............................................................14

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
No. 10-cv-02051, 2012 WL 1232187 (N.D. Cal. Apr. 12, 2012)......................14, 16

*e-Watch, Inc. v. Flir Systems, Inc.*,
Civil Action No. H-13-0638, Order, ECF No. 28 (S.D. Tex. Aug. 8, 2013)...........14

*e-Watch v. ACTi Corp., Inc.*,
Civil Action No. SA-12-CA-695-FB, Report and Recommendation, ECF Dkt. 42 (W.D. Tex. Aug. 9, 2013) .................................................................................17

*EMSAT Advanced v. T-Mobile USA, Inc.*,
No. 08-cv-00817, 2011 WL 843205 (N.D. Ohio Mar. 8, 2011) ...........................14

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988)..........................................................................12

*Gould v. Control Laser Corp.*,
705 F.2d 1340 (Fed. Cir. 1983) ..........................................................................15

*MercExchange, L.L.C. v. eBay, Inc.*,
500 F. Supp. 2d 556 (E.D. Va. 2007) ..................................................................12

*Microsoft Corp. v. TiVo, Inc.*,
Case No. 10-CV-00240-LHK, 2011 U.S. Dist. LEXIS 52619 (N.D. Cal. May 6, 2011)........17

*Middleton, Inc. v. Minnesota Mining & Mfg. Co.*,
No. 03-cv-40493, 2004 WL 1968669 (S.D. Iowa Aug. 24, 2004) .........................15

*Motson v. Franklin Covey Co.*,
No. 03-cv-01067, 2005 WL 3465664 (D.N.J. Dec. 16, 2005)...............................15

*Pi-Net Int'l, Inc. v. The Hertz Corp.*,
No. 12-cv-10012, ECF No. 31, at *5 (C.D. Cal. June 5, 2013) ........................15, 17

*Pragmatus AV, LLC v. Facebook, Inc.*,
No. 11-cv-00494, 2011 WL 4635512 (N.D. Cal. Oct. 5, 2011) ...........................18

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,
No. 12-cv-03864, 2012 U.S. Dist. LEXIS 171416 (N.D. Cal. Dec. 3, 2012).........16

*Robert Bosch Healthcare Systems, Inc. v. ExpressMD Solutions, LLC*,
   No. C 12-00068 JSW, 2013 U.S. Dist. LEXIS 27062 (N.D. Cal. Feb. 27, 2013) ...................16

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
   No. 12-cv-00021, ECF No. 116, at \*2 (C.D. Cal. Dec. 19, 2012) .....................................12, 17

*Target Therapeutics, Inc. v. SciMed Life Sys. Inc.*,
   33 U.S.P.Q.2d 2022 (N.D. Cal. 1995) .............................................................................12, 15

*Telemac Corp. v. Teledigital, Inc.*,
   450 F. Supp. 2d 1107 (N.D. Cal. 2006) ..........................................................................12, 17

*Universal Elecs. Inc., v. Universal Remote Control, Inc.*,
   No. 12-cv-00329 AG, 2013 U.S. Dist. LEXIS 64154, at \*6 (C.D. Cal. May 2, 2013) ..........12

*Wireless Recognition Tech. v. A9.com Inc.*,
   No. 12-cv-01217, 2012 WL 4005459 (N.D. Cal. Sept. 11, 2012) .....................................13, 16

*Yodlee, Inc. v. Ablaise Ltd*,
   No. 06-cv-07222, 2009 U.S. Dist. LEXIS 5429 (N.D. Cal. Jan. 15, 2009) ...........................14

STATUTES

35 U.S.C. § 102 ...........................................................................................................................11

35 U.S.C. § 103 ...........................................................................................................................11

35 U.S.C. § 303(a) .......................................................................................................................11

35 U.S.C. § 315(b) .......................................................................................................................11

35 U.S.C. § 315(c) .......................................................................................................................11

35 U.S.C. § 315(e)(2) ..............................................................................................................14, 16

35 U.S.C. § 316(a)(11) .................................................................................................................11

OTHER AUTHORITIES

77 Fed. Reg. at 48,695 .................................................................................................................11

Civil Local Rule 3-12 .....................................................................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 10, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Edward J. Davila, located in the United States District Court for the Northern District of California, at 280 South 1st Street, Courtroom 4, San Jose, California, 95113, Defendant NetApp, Inc. ("NetApp") will and hereby does respectfully move the Court to stay this litigation pending resolution of the reexamination of the five asserted claims in the one patent-in-suit asserted against NetApp.

This Motion is made on the grounds that all asserted claims in U.S. Patent No. 5,978,791 ("the '791 patent"), the sole patent at issue in this case, are currently subject to *inter partes* review ("IPR") or *ex parte* reexamination ("EPR") proceedings before the PTO. These grounds are addressed in detail in the attached Memorandum of Points and Authorities. This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Jennifer H. Forte ("Forte Decl.") and attached exhibits, on all other matters of which judicial notice may be taken, and on such other evidence and/or argument as the Court may deem appropriate.

MOTION TO STAY PENDING EX PARTE REEXAMINATION AND INTER PARTES REVIEW
CASE NO. 5:13-CV-1359-EJD

1   Dated: August 15, 2013            By:   /s/ Patrick S. Salceda

2                                            Karineh Khachatourian
                                             Patrick S. Salceda
3                                            DUANE MORRIS LLP
                                             490 South California Avenue, Ste. 200
4                                            Palo Alto, CA 94306
                                             (650) 847-4150

5                                            L. Norwood Jameson
                                             Matthew C. Gaudet
6                                            Jennifer H. Forte
                                             DUANE MORRIS LLP
7                                            1075 Peachtree Street, Ste. 2000
                                             Atlanta, GA 30309
8                                            (404) 253-6901

9                                            Joseph A. Powers
                                             Jarrad M. Gunther
10                                           DUANE MORRIS LLP
                                             30 South 17th Street
11                                           Philadelphia, PA 19103
                                             (215) 979-1000

12                                           *Attorneys for Defendant and Counterclaim-Plaintiff
13                                           NetApp, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Plaintiff PersonalWeb Technologies, LLC ("PersonalWeb") is only asserting one patent – U.S. Patent No. 5,978,791 ("the '791 patent") – against Defendant NetApp, Inc. ("NetApp"), and PersonalWeb is only asserting five claims from that one patent.  The United States Patent and Trademark Office ("PTO") recently instituted *inter partes* review proceedings reexamining the validity of the '791 patent (the "EMC IPR").  Specifically, the PTO determined that EMC Corporation and VMWare, Inc. (collectively, "EMC")[1] met the stringent standard for *inter partes* review, finding that they have a "reasonable likelihood" of prevailing on all of the challenged claims of the '791 Patent, including four of the claims asserted against NetApp in this case – and the PTO has scheduled a prompt final hearing on the EMC IPR for December 16, 2013.

NetApp did not participate in the EMC IPR because, at the one-year deadline for joining the proceeding, PersonalWeb had made the case against NetApp appear far more complicated than it appears now.  Specifically, in its original Complaint, PersonalWeb asserted eight patents with 508 claims, against NetApp.  Without explanation, and without any discovery from NetApp, PersonalWeb dropped three of those patents when it served its initial infringement contentions seven months later, thereby reducing the case from eight patents down to five patents and 508 potential claims down to 25 asserted claims.  Five months later, at the time of the one-year statutory deadline to file an *inter partes* review, PersonalWeb was still asserting those five patents and 25 claims against NetApp, making the case far more complicated than it is today.  On March 1, 2013 – after the one-year bar passed – PersonalWeb proceeded to drop four of the remaining five patents.  In addition, PersonalWeb without explanation dropped seven claims in the '791 patent, leaving this matter with only five claims in a single patent remaining at issue.  Once PersonalWeb belatedly narrowed the case to a point that it could be resolved quickly and efficiently by reexamination, NetApp filed a petition requesting an *inter partes* review of claims 1-3, 29 and 35 of the '791 patent and a motion for joinder with EMC's IPR, based on a narrow exception to the one-year bar.

---

[1] The instant case is related pursuant to Civil Local Rule 3-12 with PersonalWeb's case against EMC Corporation and VMWare, Inc., Case No. 13-cv-1358-EJD.

PersonalWeb objected to NetApp joining that proceeding, and on July 22 and 25, 2013 the PTO issued decisions denying NetApp's petition and motion for joinder on purely procedural grounds. Specifically, the PTO found that NetApp's petition introduced a new challenged claim (claim 35) and additional patentability issues beyond those present in EMC's IPR.  The day after the PTO denied NetApp's petition regarding the EMC IPR, NetApp filed a request for *ex parte* reexamination of claim 35 of the '791 patent, *i.e.*, the only asserted claim not already before the PTO as part of EMC's IPR.  That request seeks to invalidate claim 35 on essentially the same basis as the other four claims asserted against NetApp – *i.e.*, claims 1-3 and 29 – which the PTO has already set for a final hearing before the end of this year.

To be clear, if the Court stays this case, NetApp will agree to be bound by the outcome of the EMC IPR regarding the four claims asserted against NetApp (claims 1-3 and 29) to the same extent as if NetApp were participating in that IPR.  Accordingly, NetApp requests a short stay until the resolution of EMC's IPR regarding the '791 patent, which should occur within the next six months. If claims 1-3 and 29 are all invalidated, then the stay would be continued through the conclusion of the *ex parte* reexamination on the single remaining claim – claim 35 – which is subject to the same prior art on which the PTO is considering in connection with the EMC IPR.  If any of claims 1-3 or 29 survive the reexamination, then NetApp will be bound by the final adjudication of that outcome (just like EMC) to the same extent as if NetApp participated in the IPR.

As this Court has recognized, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).  In this case, the benefits of such a stay would be substantial.  Here, there are only five asserted claims in a single patent, and the same prior art is asserted against all of them in the pending IPR and *ex parte* reexamination petition. Staying this case pending a final decision from the PTO on the reexamination proceedings would undoubtedly simplify the issues in the case.  If the PTO invalidates claims 1-3 and 29 at the end of this year, those claims will be gone; if not, the validity issues will be greatly (if not entirely) simplified as a result of NetApp's agreement to be bound by the final adjudication of that outcome as if NetApp were a party to the IPR.  Likewise, the one other claim – claim 35 – is subject to the

-4-

same prior art at issue in the IPR and likely will rise or fall on the same basis, and the stay would only continue through the resolution of the claim if the other four had already been invalidated on the same prior art.

Moreover, many of the most costly stages of the litigation have yet to occur – including fact depositions, expert discovery, and summary judgment motions – each of which could be reduced or eliminated following the PTO's final decision on EMC's IPR and NetApp's EPR. Finally, plaintiff PersonalWeb would suffer no undue delay or disadvantage as a result of a stay, given the speed of the PTO's new IPR procedures, which will address all but one of the claims asserted against NetApp.

NetApp accordingly requests that the Court stay this case pending the PTO's final decision on the EMC IPR and NetApp EPR.

## II. BACKGROUND

### A. PTO's Findings About The Lack of Novelty of the '791 Patent

A brief background regarding the '791 patent is useful to understand the high likelihood that its asserted claims will no longer exist by year end. The '791 patent is directed to data storage systems that use "substantially unique identifiers" – based on all the data in a data item and only the data in the data item – to identify and access data items. *See, e.g.*, Ex. 1, '791 Patent, Title, Abstract, and col. 1, ll. 13-18.[2] The preferred embodiments create these "substantially unique identifiers" by using "hashing" functions. Specifically, a "hashing" function takes as input the data contained in a file or other data item, and produces a much smaller-sized output value, commonly called a "hash value." *See, e.g., id.* at col. 12, l. 54- col. 14, l. 39; *see also* Ex. 2, McGraw-Hill Dictionary of Scientific and Technical Terms 860 (4th ed., 1989); *see generally* Ex. 3, B. Kaliski, "A Survey of Encryption Standards," IEEE Micro 74-79, at 77 (Dec. 1993). The hash files are used to perform basic file management functions, such as identifying and accessing data items, or eliminating unnecessary duplicate copies of the data items. *See, e.g.*, Ex. 1, '791 patent, Background of the Invention.

---

[2] Unless otherwise noted, all exhibits are appended to the Declaration of Jennifer H. Forte in Support of NetApp's Motion to Stay Pending *Ex Parte* Reexamination and *Inter Partes* Review.

According to the specification of the patent, the functionality described above was new and worthy of patent protection because the prior art data storage systems identified data items based on their location or address within the data processing system, rather than their content.  *See, e.g., id.* at col. 1, ll. 23-28.  For example, files were often identified by their context or "pathname," that is, information specifying a path through the computer directories to the particular file (e.g., C:\My Documents\Law School\1L\TortsOutline.txt).  *Id.* at col. 1, ll. 35-42.  This prior art practice of identifying a data item by its context or pathname purportedly resulted in certain shortcomings.  For example, the same name might refer to two different data items, or conversely, two different names might refer to the same data item.  *Id.* at col. 2, ll. 12-16.  This could make it difficult to confirm that a data item is in fact the one named by a pathname, or to identify and eliminate unwanted duplicate copies of data items, *e.g.*, multiple copies of the same file on a file server.[3]  *Id.* at col. 2, ll. 18-21, 47-58.  In order to justify patentability, the patent's specification states that <u>all</u> prior art systems operated in this manner: "In ***all*** of the prior data processing systems, the names or identifiers provided to identify data items . . . are ***always*** defined relative to a specific context," and "there is no direct relationship between the data names and the data item."  *See, e.g., id.* at col. 1, l. 65 – col. 2. l. 3, col. 2, ll. 12-13 (emphasis added).

In the EMC IPR, the PTO has already explained that these representations were simply wrong.  As the PTO recognized in granting EMC's IPR petition, prior data processing systems ***did*** use identifiers based on the content of the data in a data item, and not its context or path-name.  In fact, these techniques were old and widely used.  The concept of using a mathematical function to create a unique identifier or "fingerprint" for a data item, based on the content of the data item predates the patents by decades.  For example, IBM developed one of the first hash tables in the 1950s (*see*, *e.g.*, Ex. 4, D. Knott, "Hashing functions," 18 The Computer Journal 265, 273-74 (1975) (discussing "history of hashing")), and Professor Ron Rivest of MIT introduced the MD5 algorithm

---

[3] For example, Alice and Bob both download the same copy of the James Bond movie *Goldfinger*.  Alice saves her copy at "C:\Movies\Bond\Goldfinger.mov", and Bob saves his copy at "C:\Videos\007\Bond-Goldfinger.mov".

referenced in the '791 patent in the early 1990s.  *See generally* Ex. 5, R. Rivest, "The MD5

Message-Digest Algorithm," Internet RFC 1321 (Apr. 1992).

Although the applicants asserted in their patent applications that they were the first to use

these hashing functions to identify data items for file management applications, this purportedly new

use of hash functions was also old and widely used.  For example, at least sixteen years before the

original patent application was filed, researchers were already using content addressable file stores

and a "hash function and bit array" to determine whether two records were identical, and to

eliminate duplicate records.[4]  Many printed publications and patents disclose and use data identifiers

exactly like those described and claimed in the patents, for the same purposes.[5]  These publications

disclose identifiers that are location- and context-independent, that are determined based on all of

and only the contents of the data item, and that are formed using identical algorithms to those

mentioned in the '791 patent.[6]

---

[4] *See*, *e.g*., Ex. 6, (EMC IPR) (2013-00082) Dkt. 8, Petition for IPR, at 18-19 (citing Babb, "Implementing a Relational Database by Means of Specialized Hardware," ACM Transactions on Database Systems, Vol. 4, No.1, at 2-4 (March 1979); Bitton and DeWitt, "Duplicate Record Elimination in Large Data Files," ACM Transactions on Database Systems, Vol. 8, No. 2, at 253 (June 1983)).

[5] *See, e.g*. *id.* at 18-25 (citing McGregor and Mariani, "'Fingerprinting' – A Technique for File Identification and Maintenance," Software Practice & Experience 1165 (1982), vol. 12, no. 12; Browne et al., "Location-Independent Naming for Virtual Distributed Software Repositories," University of Tennessee Technical Report CS-95-278 (Feb. 1995); Langer, "Re: dl/describe (File descriptions)," post to the "alt.sources" newsgroup on August 7, 1991; Kantor, "The Frederick W. Kantor Contents-Signature System Version 1.22," FWKCS122.REF (August 10, 1993); Woodhill et al., U.S. Patent No. 5,649,196, entitled "System and Method For Distributed Storage Management on Networked Computer Systems Using Binary Object Identifiers," filed Nov. 9, 1995 as a continuation of application 85,596, filed July 1, 1993).

[6] *See, e.g., id.* (citing McGregor and Mariani at 1165 ("fingerprinting" technique "produce[s] a quasi-unique identifier for a file, derived from that file's contents . . . [t]he idea is to provide an identifying feature for every file, which is intrinsically distinctive, and analogous (hopefully) to a human's fingerprint"); Browne et al. at 6 (creates "location independent file names" for identifying files on the Internet calculated using all of, and only, the contents of each file as "the ascii form of the MD5 signature of the file"); Langer at 3, 4 (addresses problem of "uniquely identifying files which may have different names and/or be in different directories on different systems" by "defining a unique identifier that does NOT include a particular site identifier," calculated by "using a cryptographic hash function such as MD5"); Kantor at 8 (creates "contents-signatures" for files based on their content and only their content as a hash of the contents of the file combined with the size of the content); Woodhill at col. 8, lines 58-65 (creates "binary object identifiers" that are "based on the contents of the binary object so that the Binary Object Identifier 74 changes when the contents of the binary object changes. . . .  [D]uplicate binary objects, even if resident on different types of computers in a heterogeneous network, can be recognized from their identical Binary Object Identifiers 74")).

**B.      PersonalWeb's Lawsuit Against NetApp**

Any seeming complexity in the state of the reexaminations as it relates to the five claims now asserted against NetApp is the direct result of the apparent gamesmanship by PersonalWeb in asserting and then withdrawing seven patents and dozens (or even hundreds) of claims in this case. At this point, discovery remains in its infancy, and there are substantial advantages to a short stay while the PTO resolves many validity issues and potentially resolves the case in its entirety.

**1.      History of Asserted Patents and Claims**

The patents and claims asserted against NetApp have been a moving target over the past year and a half, preventing the streamlined focus of this case until after the one-year statutory deadline for NetApp to institute an IPR.  The chain of events is as follows.

- PersonalWeb filed its original Complaint on December, 8, 2011, in the Eastern District of Texas, alleging that NetApp infringes **eight** asserted patents **containing over 500 claims,** including the '791 Patent, U.S. Patent No. 6,415,280, U.S. Patent No. 7,945,539, U.S. Patent No. 7,945,544, U.S. Patent No. 7,949,662, U.S. Patent No. 8,001,096, U.S. Patent No. 7,802,310 and U.S. Patent No. 6,928,442.[7]  *See* Complaint for Patent Infringement, Case No. 6:11-cv-00657, (EDTX) Dkt. 1.

- On April 4, 2012, PersonalWeb filed its First Amended Complaint in which it continued to assert **eight** patents, but expanded its list of accused products to **seven** NetApp products.  *See* First Amended Complaint for Patent Infringement, Case No. 6:11-cv-00657, (EDTX) Dkt. 19.

- On July 2, 2012, PersonalWeb served its Disclosure of Asserted Claims and Infringement Contentions ("First Disclosures") and the scope of this case changed yet again.  This time, PersonalWeb reduced the number of asserted patents to **five**, with

---

[7] PersonalWeb has also asserted one or more of these patents in separate cases against the following companies: NEC Corporation of America, Inc.; Google, Inc.; YouTube, LLC; NetApp, Inc.; Amazon.com Inc.; Amazon Web Services LLC; DropBox, Inc.; Caringo, Inc.; Autonomy, Inc.; Hewlett-Packard Co.; HP Enterprise Services, LLP; Nexsan Technologies, Inc.; Yahoo! Inc.; Rackspace US, Inc.; Rackspace Hosting, Inc.; Apple Inc.; International Business Machines Corporation; Facebook Inc.; and Microsoft Corporation.  *See* Case Nos. 6:11-cv-00655; 6:11-cv-00656; 6:11-cv-00657; 6:11-cv-00658; 6:11-cv-00659; 6:11-cv-00683; 6:12-cv-00657; 6:12-cv-00658; 6:12-cv-00659; 6:12-cv-00660; 6:12-cv-00661; 6:12-cv-00662; and 6:12-cv-00663 (E.D. Tex.).

**twenty-five** asserted claims.  PersonalWeb's infringement contentions included a reservation for Plaintiff to supplement its contentions based on its review of source code.  Ex. 7, PersonalWeb Technologies, LLC's Disclosure of Asserted Claims and Infringement Contentions.

- On October 31, 2012, PersonalWeb served its Supplemental Disclosure of Asserted Claims and Infringement Contentions ("Supplemental Disclosures") and once again changed the list of accused NetApp products.  Ex. 8, PersonalWeb Technologies, LLC's Supplemental Disclosure of Asserted Claims and Infringement Contentions.

- On November 12, 2012, NetApp sent a letter to PersonalWeb citing specific deficiencies in its Supplemental Disclosures and requesting PersonalWeb to justify its need for what appeared to be irrelevant code.  Ex. 9, 11/12/12 letter from Matthew Gaudet to Larry Hadley.  In response, PersonalWeb stated that it would provide "revised contentions that make certain allegations more clear."  Ex. 10, 11/19/12 email from Larry Hadley to Jennifer Forte.

- PersonalWeb served its First Amended Supplemental Infringement Contentions ("First Amended Supplemental Disclosures") on December 4, 2012, which included only a handful of superficial changes to the claim charts.  At the same time, PersonalWeb clarified its request for additional source code.  Ex. 11, 12/4/12 letter from Larry Hadley to Matthew Gaudet.

- On December 11, 2012, the one-year bar for *inter partes* review passed.  As of that point, PersonalWeb was asserting twenty-five claims from five patents against NetApp.

- On March 1, 2013, well over a year after PersonalWeb filed this case, PersonalWeb served its Revised Supplemental Disclosure of Asserted Claims and Infringement Contentions ("Revised Supplemental Disclosures") and dramatically reduced its allegations of infringement against NetApp from twenty-five claims across five patents to **five** claims of just **one** patent – the '791 Patent – and reduced the total number of accused products to **four** products.  Ex. 12, PersonalWeb Technologies,

-9-

LLC's Revised Supplemental Disclosure of Asserted Claims and Infringement Contentions.

As is reflected above, prior to March 1, 2013, it was unclear which claims of the various patents would remain asserted against NetApp.  Indeed, NetApp endured what appeared to be a fishing expedition involving its critically sensitive source code as PersonalWeb made four attempts to state a coherent theory of infringement and each time narrowed the scope of this case.

## 2.    Status of Discovery

NetApp moved to transfer the case to this District.  On March 21, 2013, Judge Davis conditionally granted NetApp's Motion to Transfer Venue, but retained the case pending completion of the *Markman* hearing held on July 18, 2013, and subsequent issuance of the court's claim construction order.  *See* (EDTX) Dkt. 100, Opinion and Order, at 49 ("Defendants Google, YouTube, NetApp, EMC, VMware, and Facebook WILL BE TRANSFERRED to the Northern District of California immediately upon entry of this Court's *Markman* opinion.").  On August 5, 2013, Judge Davis issued an order immediately transferring this case to this Court.  *See* (EDTX) Dkt. 128.  On August 9, 2013, NetApp requested a scheduling conference in this Court, (*See* Dkt. 5, Notice of Transfer) per the earlier direction of the Chief Judge of this District.  *See* Dkt. 2, Judge Wilken's 03/29/13 Order, at 2.  A Case Management Conference has been set for October 4, 2013. *See* Dkt. 6, Clerk's Notice Setting Case Management Conference.

Although discovery was underway prior to the transfer, the parties have made only minimal progress:  the parties have not yet negotiated email search terms and email custodians as anticipated by the Court's E-Discovery Order, no fact depositions have been taken on issues beyond venue transfer, no expert discovery has occurred, and no summary judgment motions have been filed.  *See* Forte Decl., at ¶ 22; (EDTX) Dkt. 74, E-Discovery Order, at 5-6.

## C.    The Pending Reexaminations

On December 14, 2013, EMC and VMware filed petitions with the PTO, requesting *inter partes* review of six patents asserted against them.  NetApp did not join EMC's IPR at that time because, prior to March 1, 2013, seeking *inter partes* review (or *ex parte*s reexamination) would not

have been an efficient or practical method to resolve all claims in dispute in this case as PersonalWeb had yet to determine which patents and claims it would assert against NetApp.

On May 17, 2013, the PTO instituted all six of EMC's IPRs, finding a "reasonable likelihood that [EMC/VMWare] will prevail in challenging [each of the challenged claims] as unpatentable under 35 U.S.C. §§ 102 and 103." *See, e.g.,* Ex. 13, (EMC IPR) Dkt. 21, Decision to Institute. The PTO has scheduled a final hearing on EMC's IPRs for December 16, 2013, and is statutorily required to issue final decisions on EMC's IPRs "not later than 1 year" after the petitions were granted – or by May 17, 2014.[8] *See* 35 U.S.C. § 316(a)(11); Ex. 14, (EMC IPR) Dkt. 22, Scheduling Order.

After finally receiving what it understood to be the final version of the asserted claims, NetApp submitted a petition for *inter partes* review of asserted claims 1-3, 29, and 35 of the '791 patent along with a timely motion for joinder with the instituted EMC IPR.[9] The PTO denied NetApp's petition and motion for joinder on procedural grounds finding that the inclusion of claim 35 (not at issue in EMC's IPR) would raise additional substantive issues that are not currently before the Board (i.e., additional issues relating to invalidity beyond the prior art already at issue in the other claims). *See* Ex. 15, IPR2013-00319, Dkt. 18, Decision on Institution of *Inter Partes* Review; Ex. 16, IPR2013-00319, Dkt. 19, Decision on Motion for Joinder. Upon receipt of the Board's decisions on July 23 and 25, 2013, NetApp promptly filed its request for *ex parte* reexamination of claim 35 (the only asserted claim not before the PTO in EMC's IPR) on July 26, 2013. Ex. 17, Request for *Ex Parte* Reexamination. NetApp expects the PTO to issue a decision on its request no later than October 26, 2013 (*i.e.*, within 3 months from the filing date pursuant to 35 U.S.C. 303(a)).

Given the ongoing IPR proceeding and the impending EPR proceeding, which will address all claims asserted against NetApp, NetApp respectfully requests that this Court stay this litigation pending the PTO's review of the '791 patent.

---

[8] The one-year period may be extended for good cause by not more than 6 months, although "[e]xtensions of the one-year period are anticipated to be rare." 77 Fed. Reg. at 48,695.
[9] The one-year bar set forth in 35 U.S.C. § 315(b) does not apply to a request for joinder under 35 U.S.C. § 315(c). *See* 35 U.S.C. § 315(b).

1

**III.    LEGAL STANDARDS**

2        "Courts have inherent power to manage their dockets and stay proceedings, including the

3 authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849

4 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted).  A court may grant a motion to stay "in order

5 to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply to avoid

6 the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit

7 will not survive reexamination." *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 563

8 (E.D. Va. 2007).  In this district, "there is a liberal policy in favor of granting motions to stay

9 proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp.*

10 *v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

11       Courts consider three main factors in determining whether to stay a case pending

12 reexamination: "(1) whether discovery is complete and whether a trial date has been set; (2) whether

13 a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly

14 prejudice or present a clear tactical disadvantage to the nonmoving party." *Telemac Corp. v.*

15 *Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (citation omitted).[10]  Courts may also

16 look beyond these three factors to the totality of the circumstances.  *Universal Elecs Inc., v.*

17 *Universal Remote Control, Inc.*, No. 12-cv-00329 AG, 2013 U.S. Dist. LEXIS 64154, at *6 (C.D.

18 Cal. May 2, 2013) (citing *Allergan Inc. v. Cayman Chem. Co.*, No. 07-cv-01316, 2009 WL 8591844,

19 at *2 (C.D. Cal. Apr. 9, 2009)).

20 **IV.    ARGUMENT**

21       As set forth below, each of the three factors favors a stay.

22       **A.    The Stage of the Litigation Proceedings in This Case Favors A Stay**

23       The early stage of a litigation weighs in favor of a stay pending PTO proceedings.  *See*

24 *Target Therapeutics, Inc. v. SciMed Life Sys. Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995).  This

25 element of the stay analysis focuses "on the stage of litigation proceedings, not the length of time

26

27 [10] Although there have been relatively few requests for stays pending an IPR, as opposed to an *inter partes* reexamination, courts have applied the same three factors in determining whether to grant a stay.  *See, e.g., Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-cv-00021, 2012

28 WL 7170593, at *1 n.1 (C.D. Cal. Dec. 19, 2012).

that has passed since the filing of the case." *See Wireless Recognition Tech. v. A9.com Inc.*, No. 12-cv-01217, 2012 WL 4005459, at *2 (N.D. Cal. Sept. 11, 2012).

NetApp sought *inter partes* review of all asserted claims in this case and sought to join EMC's IPR as soon as it was reasonably practical to do so.  As discussed above, in its Original Complaint, PersonalWeb initially asserted eight patents against NetApp.  *See* Complaint for Patent Infringement, (EDTX) Dkt. 1.  By the time it served its first set of Asserted Claims and Infringement Contentions on July 2, 2012, PersonalWeb had narrowed its allegations to twenty-five claims across five patents.  *See* Ex. 7.  These contentions were replete with placeholders and left NetApp largely in the dark as to PersonalWeb's infringement allegations.  PersonalWeb served its Supplemental Disclosures on October 31, 2013 after reviewing 7 GB of NetApp source code.  *See* Ex. 8.  PersonalWeb had changed the scope of its case once again and NetApp notified PersonalWeb that its Supplemental Contentions remained severely deficient.  *See* Ex. 9.  NetApp received a third set of contentions on December 4, 2013, which included only a handful of superficial changes to the claim charts.  It wasn't until March 1, 2013 that NetApp received a final set of infringement contentions, in which PersonalWeb *substantially* narrowed this case to just 5 asserted claims of a single patent, the '791 patent.  *See* Ex. 12.

PersonalWeb's delay tactics and shotgun approach to their accusations in this litigation forced NetApp to wait until after March 1, 2013 – when PersonalWeb finally decided which patents and claims it would assert against NetApp – before seeking *inter partes* review.  Had NetApp sought *inter partes* review of the claims asserted in PersonalWeb's first, second, or even third round of infringement contentions, it would have expended an immense amount of time and money fighting patents and claims no longer asserted against NetApp.[11]

Notwithstanding PersonalWeb's maneuvering, NetApp will stipulate to a procedure here that will obviate the consequence of PersonalWeb's actions:  NetApp will be bound by the outcome of the EMC IPR as to the four overlapping claims of the '791 patent after final adjudication of the PTO's decision as if NetApp were a party to the IPR, and will agree that the stay can be lifted if any

---

[11] The filing fees, alone, are $27,200 for each IPR.

of those claims survive.[12]  Accordingly, the stay would only continue past the EMC IPR if all four claims are invalidated, and all that is left is for the single remaining claim (claim 35) to be resolved via the *ex parte* reexamination.

As discussed above, this case was transferred to the Northern District of California on August 5, 2013.  Although the parties have just concluded the *Markman* hearing in the Eastern District of Texas, there is no case schedule, as the case management conference in this Court is scheduled for October 4, 2013.  Moreover, the parties have made only minimal progress in discovery; no fact depositions have been taken on issues other than venue and no expert discovery has occurred.

Courts have repeatedly stayed cases with similar procedural postures to the one here.  In *Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 10-cv-02051, 2012 WL 1232187 (N.D. Cal. Apr. 12, 2012), for example, this Court found that the case had "not reached the 'point of no return' for which a stay would [be] inappropriate," despite the fact that the case had been pending for more than two years and the parties were engaged in discovery and had already filed claim construction briefs.  *Id.* at *4; *see also AT&T Intellectual Prop. I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011) (finding that the stage-of-the-proceedings factor weighed in favor of a stay where the parties had not exchanged expert reports or taken any depositions, but had filed claim construction briefs).  Similarly, in *Yodlee, Inc. v. Ablaise Ltd*, No. 06-cv-07222, 2009 U.S. Dist. LEXIS 5429 (N.D. Cal. Jan. 15, 2009), the Court granted a stay where a *Markman* hearing had already been held, and a decision on claim construction had already been issued, in a concurrent litigation on the identical patent claims.  *Yodlee*, 2009 U.S. Dist. LEXIS 5429 at *4-5, 19; *see also EMSAT Advanced v. T-Mobile USA, Inc.*, No. 08-cv-00817, 2011 WL 843205, at *1-3 (N.D. Ohio Mar. 8, 2011) (granting stay where *Markman* hearing had been held and fact discovery was set to close in ten days, but there remained several costly stages of litigation that could be eliminated or reduced depending upon results of PTO's review).  In fact, courts have granted stays even in cases

---

[12] *See* Ex. 18, *e-Watch, Inc. v. Flir Systems, Inc.*, Civil Action No. H-13-0638, Order, ECF No. 28 (S.D. Tex. Aug. 8, 2013) (granting defendant's motion to stay pending the outcome of IPR proceedings initiated by another party on condition that the estoppel provision of 35 U.S.C. § 315(e)(2) apply to defendant).

far more advanced than this one.  *See, e.g., Motson v. Franklin Covey Co.*, No. 03-cv-01067, 2005 WL 3465664, at *2 (D.N.J. Dec. 16, 2005) (granting stay despite discovery being complete and summary judgment decided); *id.* (noting that in *Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983), the Federal Circuit upheld a stay "even where it was entered five years after commencement of litigation and only 20 days before scheduled start of trial"); *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, No. 03-cv-40493, 2004 WL 1968669, at *1, 5, 10 (S.D. Iowa Aug. 24, 2004) (granting stay eight years into litigation, less than one month before scheduled trial, and with several summary judgment motions pending).  In this case, the most time-consuming and costly stages of the litigation have yet to occur, including fact depositions, expert reports and depositions, and summary judgment motions.  Each of these stages could be reduced or eliminated following the PTO's final decision on EMC's IPR and NetApp's EPR.  A stay pending the outcome of the PTO proceedings could save the Court and the parties substantial efforts and costs.

### B.    A Stay Will Simplify the Issues

A stay is warranted in this case because it will simplify the issues.  The reexamination proceedings could result in the complete elimination of all claims asserted in this litigation (which appears highly likely in view of the strongly worded Order instating the EMC IPR on the '791 patent).  Proceeding with this litigation while the reexamination proceedings are pending at the PTO would create a substantial risk that the Court and the parties will expend time and resources litigating issues that will be eliminated or altered by the review proceedings.[13]  In contrast, waiting for the outcome of the reexamination proceedings "could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims."  *Target Therapeutics*, 33 U.S.P.Q.2d at 2023.

---

[13] To the extent Plaintiff argues that a stay should be denied because it may create dual track litigation with its other pending cases in the Northern District of California - all *separate* cases under the AIA - this concern is unwarranted.  *See* Ex. 19, *Pi-Net Int'l, Inc. v. The Hertz Corp.*, No. 12-cv-10012, ECF No. 31, at *6-7 (C.D. Cal. June 5, 2013) (staying three of twelve cases and finding, "in assessing the totality of the circumstances, . . . that Plaintiff's concern of dual track litigation is unwarranted as the Court has broad discretion to manage its own docket.  To the extent a stay is appropriate in the nine other cases filed by Plaintiff, the Court has the power to stay the proceedings.") (citation omitted).

In this case, the PTO has already determined that EMC and VMware have met the stringent standard for *inter partes* review, finding that they have a "reasonable likelihood" of prevailing in challenging asserted claims 1-3, and 29 from the '791 patent. *See* Ex. 13, (EMC IPR) Dkt. 21, Decision to Institute. It accordingly is likely that the PTO will cancel or modify all of these asserted claims. This Court has previously held that "[s]uch likelihood weighs in favor of a stay." *Wireless Recognition Tech.*, 2012 WL 4005459, at *2 (citing *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d at 563 (favoring a stay when the evidence shows a likelihood that the patents-in-suit will not survive reexamination)). And although the PTO has not yet rendered a decision on NetApp's request for *ex parte* reexamination of claim 35, this does not make a stay less warranted in this case. *See Robert Bosch Healthcare Systems, Inc. v. ExpressMD Solutions, LLC*, No. C 12-00068 JSW, 2013 U.S. Dist. LEXIS 27062, at *8 (N.D. Cal. Feb. 27, 2013) (granting a stay where the PTO has already granted the applications to reexamine two of the patents-in-suit and an application for *ex parte* reexamination of a third patent is currently pending). Moreover, even if the PTO were to cancel or modify only some of the asserted claims or were to reject NetApp's request to reexamine claim 35, a stay would still be warranted because the PTO's decisions would narrow and simplify the issues. *See, e.g., Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 12-cv-03864, 2012 U.S. Dist. LEXIS 171416, at *4 (N.D. Cal. Dec. 3, 2012) (granting a stay pending *ex parte* reexamination and *inter partes* review of asserted claims and stating that "[w]hen a reexamination stands to simplify some, if not all, of the issues in a case, the second factor may still properly weigh in favor of a stay"); *Robert Bosch Healthcare Systems, Inc. v. ExpressMD Solutions, LLC*, 2013 U.S. Dist. LEXIS 27062, at * 9 ("the fact that the PTO has rejected reexamining some of the claims of the [asserted patent] does not significantly undermine the potential benefits of the reexamination process."); *see also Convergence Techs. (USA), LLC,* 2012 WL 1232187, at *5 (noting "[a]ny resulting scenario results in some form of simplification"). Furthermore, once EMC's IPR concludes, irrespective of the results, NetApp has agreed to be estopped from asserting that these claims are invalid "on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." 35 U.S.C. § 315(e)(2). Thus, the PTO's determination on the IPRs will

simplify the issues for these four claims regardless of the results.[14]   And regarding claim 35 – which has essentially the same elements as the other four claims and is subject to the same prior art – the stay would only continue if the PTO invalidates claims 1-3 and 29.   If those claims are invalidated such that the stay continues and only claim 35 remains, either that claim will be invalidated (for the same reasons as the other claims, thus eliminating all asserted claims) or at a minimum the case will be greatly crystallized:   "the PTO has acknowledged expertise in evaluating prior art and assessing patent validity . . . and the PTO's evaluation of that prior art, though not dispositive, will at least be helpful" to this Court.   *Microsoft Corp. v. TiVo, Inc.*, Case No. 10-CV-00240-LHK, 2011 U.S. Dist. LEXIS 52619, at *15 (N.D. Cal. May 6, 2011).

### C.      A Stay Will Not Unduly Prejudice or Disadvantage PersonalWeb

Finally, a stay will not unduly prejudice PersonalWeb or present it with a clear tactical disadvantage.   The final hearing in the EMC IPR is set for less than five months from now.   The mere fact that the reexamination process may cause some delay – particularly a delay that is potentially this short – is not reason to deny a stay pending PTO review.   *See Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (noting the delay inherent to the PTO reexamination process does not, in itself, constitute undue prejudice); *see also* Ex. 19, *Pi-Net Int'l, Inc. v. The Hertz Corp.*, No. 12-cv-10012, ECF No. 31, at *5 (C.D. Cal. June 5, 2013) ("Mere delay in the litigation does not establish undue prejudice").   Also, as discussed above, any delay in NetApp's initiating the PTO reexamination proceedings is purely the result of PersonalWeb's repeated narrowing of its asserted patents and claims over the course of a year and a half.

Nor can PersonalWeb credibly claim any undue prejudice from NetApp's continuing to sell the accused products during the length of any stay.   PersonalWeb does not manufacture a product that competes with the accused products – or any products at all – and PersonalWeb has not sought a preliminary injunction in this case.   *See Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-cv-00021, 2012 WL 7170593, at *4 (C.D. Cal. Dec. 19, 2012) (finding lack of undue

---

[14] *See* Ex. 20, *e-Watch v. ACTi Corp., Inc.*, Civil Action No. SA-12-CA-695-FB, Report and Recommendation, ECF Dkt. 42 (W.D. Tex. Aug. 9, 2013) (recommending stay pending third party's petition for IPR even though defendant would not be estopped from reasserting invalidity arguments raised in the IPR proceeding and one of the patents-in-suit is not the subject of the IPR petition).

prejudice in granting a stay pending IPR in part "because [plaintiff] does not dispute that it has not sought a preliminary injunction and that [plaintiff] and [defendant] are not direct competitors").[15] Granting a stay will not change the competitive circumstances of this case, and the availability of monetary damages to Plaintiff is sufficient to redress any alleged harm.  *See, e.g., Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-cv-00494, 2011 WL 4635512, at *3 (N.D. Cal. Oct. 5, 2011) (noting "[c]ourts have consistently found that a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement") (citation omitted).

## V.   CONCLUSION

Because all three factors weigh in favor of a stay, and given this District's liberal policy in favor of granting stays pending PTO proceedings, NetApp respectfully requests that the Court stay the entirety of this action pending the outcome of the PTO's *inter partes* review of the '791 patent. If claims 1-3 and 29 are all invalidated, then NetApp requests that the stay be continued through the conclusion of the *ex parte* reexamination on the single remaining claim – claim 35 –and grant such further relief as it deems just and proper.

Dated: August 15, 2013             By:   _/s/ Patrick S. Salceda_____
                                          Karineh Khachatourian
                                          Patrick S. Salceda
                                          DUANE MORRIS LLP
                                          490 South California Avenue, Ste. 200
                                          Palo Alto, CA 94306

                                          L. Norwood Jameson
                                          Matthew C. Gaudet
                                          Jennifer H. Forte
                                          DUANE MORRIS LLP
                                          1075 Peachtree Street, Ste. 2000
                                          Atlanta, GA  30309

                                          Joseph A. Powers
                                          Jarrad M. Gunther
                                          DUANE MORRIS LLP
                                          30 South 17th Street
                                          Philadelphia, PA 19103

                                          *Attorneys for Defendant and Counterclaim-*
                                          *Plaintiff NetApp, Inc.*

---

[15] PersonalWeb has tested one software product, StudyPods, through a beta-testing program.  *See* (EDTX) Dkt. 20-7, 04/04/12 Weiss Decl., at ¶ 8; *see also* (EDTX) Dkt. 27-5, 04/26/12 Weiss Dep. Tr., at 96:1-100:10.

-18-